Klep, Appellant, *v.* American Boiler Works et al.

Argued April 10, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*J. S. Jiuliante,* with him *Paul A. Stephany,* for appellant.

*Robert L. Wallace,* for appellees.

OPINION BY KELLER, P. J., June 24, 1940:

This appeal is ruled against the appellant, claimant, by our decision in *Gibson v. Blower's Paint Service et al.,* 140 Pa. Superior Ct. 216, 14 A. 2d 154, which followed the legal principles enunciated in *Messer v. Mfrs. Light & Heat Co.,* 263 Pa. 5, 9, 106 A. 85, and *Smedley v. Frank & Seder,* 116 Pa. Superior Ct. 270, 272, 176 A. 783.

The evidence in the record clearly establishes that the claimant's husband, Konstanty Klep, also known as Gust Klep, was employed by F. J. Tollon, trading as American Boiler Works, as a welder, in his business of building small boats and repairing ships in the harbor in Presque Isle Bay, Erie, Pennsylvania. He was killed on March 15, 1937 about 3:05 o'clock in the afternoon while performing a voluntary act of courtesy for the caretaker or 'shipkeeper' in charge (on behalf of her owners) of a ship anchored in the bay. The defendant owned two tugs which were used in carrying his workmen from the dock to the ships being repaired and to transport material needed in the repair work, and also to assist in the work of building and repairing boats. One of these was the 'William E. Flaherty', which was a regular work boat or repair boat used in welding and

furnishing air. Klep held a license to operate the boat, when he was not welding.

In going out on these tugs to the ships under repair, defendant's employees were accustomed to transport groceries and supplies purchased by shipkeepers for their own use. It was wholly a matter of courtesy to the shipkeeper, not ordered or directed or requested by the defendant, but apparently permitted or, at least, not forbidden by him. Some such groceries had been placed by a shipkeeper on defendant's tugboat 'William E. Flaherty', while it was lying at the end of the 'coal machine dock', to be taken out to the 'Elba', a ship anchored in the bay, which was being repaired by defendant. Sometime later, having learned that the 'William E. Flaherty' was not going out to the anchored ships that afternoon, the shipkeeper asked claimant's husband and another of defendant's employees, Angelo Gori, to help him take the groceries to the 'Harbor Tug', a boat not owned by defendant, which was lying on the other side of the dock and was going to make the trip. To do so, the groceries were hoisted by a rope from the Flaherty to the ship way, on which its employees had been working, and then carried down from the ship way to the dock, and thence to the 'Harbor Tug' on the other side of the dock. There is no evidence in the record that defendant's employees had ever done this before, or that the employer had any knowledge of its being done. The tracks of the Pennsylvania Railroad were laid on this dock, leading to the coal machine or elevator. While claimant's husband was carrying a box of groceries on his shoulder and a basket in his hand across the railroad tracks on the dock, on his way to the 'Harbor Tug' on the other side of the dock, he was struck and killed by a moving coal car.

There was no evidence in the record which would justify a finding that the errand on which the deceased employee was engaged was ordered, directed or even requested by his employer. It was not in the course

of his employment, nor was it undertaken by him at the order, direction or request of his employer in the furtherance of his business or affairs. It was merely an individual act of courtesy performed by him at the request of the shipkeeper, who was not an employee of defendant and had no authority or direction over Klep; and the fact that the defendant had permitted, or not objected to, his employees transporting groceries in his tugboats to the various shipkeepers left in care, by their owners, of ships being repaired by him, did not warrant a finding that in carrying groceries for a shipkeeper from one of his tugboats to the 'Harbor Tug', across the tracks of the Pennsylvania Railroad, Klep was acting in the course of his employment or actually engaged in the furtherance of his employer's business or affairs, pursuant to his order, direction or request; rather than voluntarily performing an act of courtesy for a third person. The test, as stated in *Messer v. Mfrs. Light & Heat Co.*, supra, p. 9, is "Did he go upon this mission voluntarily or because of the request of his superintendent"; and in *Smedley v. Frank & Seder*, supra, p. 272, where compensation was allowed the claimant for the death of her husband, who was killed while returning from hauling some household goods for a fellow employee, outside the usual course of his employment, but *pursuant to the orders* of the superintendent of the store, it was so ruled because the hauling had been *ordered* to be done, as distinguished from *permitted* to be done.

The peculiar duties and relations of a *traveling salesman* in securing orders for his employer, referred to in *Chase v. Emery Mfg. Co.*, 271 Pa. 265, 267, 113 A. 840, are not to be generally extended and applied to other kinds of employment.

See also *Holdsworth v. Penna. P. & L. Co.*, 337 Pa. 235, 10 A. 2d 412; and *Gittelman v. Hoover Co.*, 337 Pa. 242, 10 A. 2d 411.

The judgment is affirmed.